## SMITH ET AL. *v.* STEPHENS, TREASURER.

[No. 21,442.    Filed March 8, 1910.]

1. CONSTITUTIONAL LAW.—*Class Legislation.*—A statute which deals alike with all who are in the same class is not invalid on the ground that it grants unequal privileges and protection.  p. 567.

2. CONSTITUTIONAL LAW.—*Classes.—Size of.*—Whether the class to which a statute should apply is large or small is a question for the legislature.  pp. 567, 572.

3. CONSTITUTIONAL LAW.—*Taxation.—Property Assessable.*—What property shall be assessed, and how it shall be taxed, there being uniformity and equality of rate as to the property of the same class, are legislative questions.  p. 567.

4. CONSTITUTIONAL LAW.—*Due Process.—Equal Rights.—Class Legislation.*—The due process, equal protection, and equal privilege clauses of Article 14, §1, of the federal Constitution do not apply to state tax laws which do not discriminate against particular classes or particular persons.  p. 567.

5. CONSTITUTIONAL LAW.—*Non-Enforcement of Statute.—Taxation.* —The imperfect enforcement of a statute for the assessment of property does not render such statute unconstitutional.  p. 568.

6. TAXATION.—*Corporations.—Assessment.*—Domestic corporations, other than for banking, are assessed by deducting the value of the tangible property from the value of the capital stock, the excess being taxed to the corporation, but if there be no excess, the corporation is assessed only for the tangible property.  p. 569.

7. TAXATION.—*Banks.—Surplus.*—The assessed value of real estate belonging to a bank, which real estate is carried on the books as a part of the bank's surplus, and which is assessed and listed for taxation separately, should be deducted from the value of the capital stock, and the excess only should be charged against the bank.  pp. 570, 571, 572.

8. TAXATION.—*Valuation.—Presumption from Amount Invested.*— In valuing property for taxation, the presumption, in the absence of other evidence, is that the property is worth the amount which it cost the owner.  p. 570.

9. BANKS.—*Power to Hold Property.*—Banks organized under the state laws have power to hold real estate for certain defined purposes only, and when taken for debt, can hold it for only five years. p. 571.

10. TAXATION.—*Boards of Review.—Administrative Acts.*—Acts of the board of review in deducting the assessed value of the real estate of a bank from the value of its capital stock, are purely administrative. p. 572.

11. APPEAL.—*When Avoidable Constitutional Questions Considered.* —Where the proper construction of a statute involves constitutional questions the Supreme Court may decide same, although the judgment must be reversed on other grounds. p. 573.

12. TAXATION.—*Banks.—Surplus.—Real Property.*—A bank which reports for taxation a capital stock of $50,000, a cash surplus of $20,000 (excluding a tract of land costing the bank $14,800, and carried as surplus), and undivided profits of $2,800, should be assessed for taxation on the true cash value of its capital stock. its surplus (exclusive of real estate which is separately reported and taxed), and its profits. p. 573.

From Warren Circuit Court; *J. T. Saunderson,* Judge.

Suit by William C. Smith and others against William H. Stephens, as treasurer of Warren county. From a judgment for defendant, plaintiff appeals. *Reversed.*

*J. Frank Hanly, Charles V. McAdams* and *Samuel R. Artman,* for appellants.

*Stansbury & Billings,* for appellee.

MYERS, J.—Complaint by appellants as stockholders of the Warren County Bank, to enjoin the treasurer from collecting alleged unlawful taxes assessed against them on their shares of stock.

The questions for determination arise upon the construction to be given to §§10208-10210 Burns 1908, Acts 1907, p. 624, §§1-3. The complaint discloses that appellants were all of the shareholders of the Warren County Bank. In making the statement for taxation in 1907 the cashier of the bank reported to the auditor under §10210, *supra,* that the capital stock of the bank was $50,000, its surplus, $20,000, and its undivided profits, $2,800; that $14,800 over and above the $20,000 of its surplus, had been invested

in real estate, which the bank had been compelled to take in the course of its business, which real estate was situate in different townships from the township of the location of the bank, and the officer in his statement deducted the sum of $14,800, so invested from the surplus, and reported the remainder of its surplus and undivided profits, together with its capital, for taxation at the sum of $72,800. The board of review added the $14,800 to the surplus and undivided profits, making a total of $87,600, upon which it imposed an assessment of eighty per cent on the whole, which was the rule applied in assessing all other bank shares, making $70,-080. From this latter sum the board deducted $7,070, the assessed value of the real estate in which the bank had invested $14,800, leaving $63,010 for taxation. The bank appealed from this assessment to the State Board of Tax Commissioners, which board dismissed the appeal, on the ground that there was no right of appeal in the bank. The stockholders then paid the taxes based upon the amount which they admitted as correct, to wit, $72,800, and brought suit against the county treasurer to enjoin the threatened collection of the difference. A demurrer was sustained to the complaint, the ruling on which is the only error assigned.

The controversy arises over the following language used in §10210, *supra*, respecting the manner of assessing the shares of stock in a banking business: "Whenever any such bank, banking association or trust company shall have acquired real estate, the assessed value of such real estate shall be deducted from the valuation of the capital or capital stock of such bank, banking association, or trust company." It is insisted that if the bank is not permitted to deduct the amount it has invested in the real estate, but only the assessed value, then, as to the difference between the amount invested and the assessed value, such difference is twice taxed, in violation of section one of the 14th amendment to the federal Constitution, guaranteeing due process of law,

unabridged privileges and immunities, and the equal protection of the laws, and of article 10, §1, of the state Constitution, providing that taxation shall be upon a uniform and equal rate of assessment, and of article 1, §23, of the state Constitution, prohibiting privileges and immunities to one class which, upon the same terms, shall not belong to all citizens. Taking the last proposition first, together with the equal protection and the privilege and immunity clauses of the federal Constitution, to which it is allied, if all who are in the same class or like situated are dealt with alike, there is no discrimination inimical to either Constitution. We have lately had occasion to go into these questions in the case of *Board, etc.,* v. *Johnson* (1909), *ante,* 76, and it is unnecessary again to cite the cases there collected. Whether the legislation is applicable to a large or to a small class is a purely legislative question. *Board, etc.,* v. *Johnson, supra,* and cases there cited.

What property shall be assessed and how it shall be taxed, are legislative questions, so long as there is uniformity, and equality of rate as to those of the same class. *Board, etc.,* v. *Johnson, supra,* and cases cited; *State, ex rel.,* v. *Smith* (1902), 158 Ind. 543, 63 L. R. A. 116; *Cleveland, etc., R. Co.* v. *Backus* (1893), 133 Ind. 513, 18 L. R. A. 729; *Gilson* v. *Board, etc.* (1891), 128 Ind. 65, 11 L. R. A. 835; Cooley, Taxation (2d ed.), 164 *et seq.; Sharpless* v. *Mayor, etc.* (1853), 21 Pa. St. 147, 59 Am. Dec. 759.

The due process of law, equal protection of the laws and the privilege and immunity clauses of article 14, §1, of the federal Constitution do not abridge the right of the states to adjust their systems of taxation in all proper and reasonable ways, so long as discrimination is not made against particular classes or particular persons. *Board, etc.,* v. *Johnson, supra,* and cases cited; *State Railroad Tax Cases* (1875), 92 U. S. 575, 23 L. Ed. 663; *Jennings* v. *Coal*

*Ridge, etc., Coal Co.* (1893), 147 U. S. 147, 13 Sup. Ct. 282, 37 L. Ed. 116; *Travelers Ins. Co.* v. *Connecticut* (1902), 185 U. S. 364, 22 Sup. Ct. 673, 46 L. Ed. 949.

It is not claimed here that there is discrimination, save in the one particular, that the shareholders would be doubly taxed, in violation of the equality clause, by reason of being taxed on the difference between the assessed value of the real estate and the amount invested in the real estate upon which they are taxed as surplus, in that the surplus to that extent is represented by the real estate, and so taxed. The object, the express letter of the statute, and the system of taxation as a whole is one thing; the application of the statute in administration is quite a different thing. It is by reason of this difference, and not by reason of a deficiency or inequality in the law itself, that the condition arises which is here presented. The statute with respect to the assessment of both personal and real property is the same. It requires that each kind of property be assessed at its "full, true cash value," or "true cash value, * * * being the price which could be obtained for said property at private sale, and not at forced or auction sale." §§10197, 10202, 10256 Burns 1908, Acts 1903, p. 49, §§7, 32, Acts 1891, p. 199, §95.

Take the case before us: It is alleged that the bank has invested $14,800 in real estate, and that it is of that value, yet it is assessed for taxation at only $7,070, less than one-half its "true cash value." Had it been assessed at its "true cash value," it would have been assessed for at least $14,800, so that it is seen that the fault lies, not with the statute, but with the assessing authorities. It is no answer to say that the taxes are assessed upon an equal valuation with other lands, for, if so, that only proves that none of them are assessed at their true cash value; but, so far as the statute is concerned, that is the command, in valuing. *State, ex rel.,* v. *Smith, supra; Willis* v. *Crowder* (1893), 134 Ind. 515; *Cleveland, etc., R. Co.* v. *Backus, supra.* It can be no

fault of the law that the valuing officers have failed in their duty.

If the land is assessed at less than one-half its admitted value, then appellants are not paying by so much the amount they ought to pay, but are paying relatively the same on the real estate, supposing the assessment upon all other lands to be made in the same manner, and the amount they are assessed on the difference in their surplus invested in the land would probably be about the equivalent, allowing for the difference in the rate between the township where the land is located and taxed, and the township where the bank is located and taxed; but even that condition and that inequality are not created or contemplated by the statute. The statute intends just the contrary. It intends equality, and if the true cash value of all property were made the basis for taxation, as the statute intends, it would result in about as equal and uniform rate as is possible to be devised. If that were the case, then, as is provided in §10210, *supra,* "whenever any such bank, banking association or trust company shall have acquired real estate, the assessed value of such real estate shall be deducted from the valuation of the capital or capital stock of such bank, banking association, or trust company," we have no difficulty in understanding what was intended. That is, the assessed value is intended by the statute to be the "true cash value," and this would result in equality among all classes of taxpayers, and on all classes of property. We are referred to §10234 Burns 1908, Acts 1891, p. 199, §74, referring to the taxation of domestic corporations, pro-

6. viding that "where the capital stock, or any part thereof, is invested in tangible property, returned for taxation, such capital stock shall not be assessed to the extent that it is so invested," as placing stress on the difference between the amount invested in land or tangible property, and the assessed value of the tangible property, and permitting deduction of the amount so invested, in assessing the stock or

the corporation itself. It should be noted that this section applies to domestic corporations other than banking, and a different method of assessment is used, but the one idea is paramount as to the stock, and that is to ascertain its cash value, which, for the purposes of taxation, does not represent the tangible property, while for all other purposes it does, and if the capital stock exceeds in value that of the tangible property, the stock is taxable on the excess, but if the tangible property exceeds in value the capital stock, the latter is not taxable. *Hyland* v. *Central Iron, etc., Co.* (1891), 129 Ind. 68, 13 L. R. A. 515; *Hyland* v. *Brazil Block Coal Co.* (1891), 128 Ind. 335.

If the land were assessed, as the statute commands, at its "full cash value," that would be the limit of the amount which should be paid upon, regardless of the amount invested. For example, suppose the bank had invested $14,800 in real estate, which was in fact only worth $7,070. Its surplus is in fact reduced $7,730, through a failing investment of $14,800, but it would be manifestly unjust to tax the shares for $14,800, when $7,070 is invested in real estate which is taxed. It is equally as manifest that it would be unjust to tax the shares on the basis of a surplus of $7,730 which did not exist. So, for the purposes of taxation only, and to avoid double taxation, the real estate is separated, and taxed the same as other real estate, upon the theory that all real estate in the taxing district is assessed at its true cash value, and as the representative of an equal amount of the surplus, this valuation is deducted from the valuation of the shares, and the remaining surplus, if any, goes to make up the valuation of the shares, as distinct from the real estate. But if the whole amount invested in the real estate were deducted, and the real estate taxed at one-half its value, or less, as in this case, and only that amount taxed, an actual value of one-half would not be taxed at all. In the absence of some showing, the land would be presumed to be equal in value to the amount invested in it.

Take the other side of the question, and suppose that upon an investment of $14,800 the bank had acquired real estate of the value of $25,000.   The shares are worth $10,200 more than the apparent assets, or nominal surplus.   Here again the value of the shares must be ascertained; but how ascertained? Of the surplus, $14,800 is invested in the real estate, and the additional sum of $10,200 is an actual surplus.   If the real estate were assessed at its full cash value, as the statute contemplates, it would represent not only the $14,800, but 7.   $10,200 additional, and that value would be taxed as land, not as shares, and that sum would be deducted from what would otherwise be the value of the shares, and the result would be the same, in the taxing process, as in case of the land's being less in value than the amount invested, but it could not be insisted in such case that the land should be taxed, and the shares taxed for the difference between the investment and the added value, for that would clearly be double taxation—presumed not to be intended nor to be given effect.   The value of the stock for the purposes of taxation should not be confounded with its value, as representing the actual value for any other purpose.   The statute does not provide that the amount invested in the land shall be deducted, as in case of domestic corporations other than banking, for the obvious reason that, in assessing the stock in such domestic corporations, the stock is only assessed on the excess value of the stock above the value of the tangible property, which may consist of land or other tangible property, or both, as important parts of the business; while as to banks, as being *quasi*-public institutions, and servers of the public, they are supposed and intended to have their assets in money. Those incorporated under the state law can only acquire and hold real estate for certain defined purposes, and cannot 9.   not hold real estate, taken for debt, for more than five years.   §3340 Burns 1908, §2695 R. S. 1881.

The statute provides for the deduction of the assessed value of the land, upon the theory that that is the cash value, and

upon that theory the one would approximately, at least, equal the other, and there is no double taxation in the proposition. That it may not so occur in practice, is not the fault of the law, but of those charged with its execution. Assessments upon true cash value would operate equally, and that is the design of the statute. We agree with counsel for appellants that the matter of deduction of the assessed value of the real estate from the valuation of the stock is an administrative matter, the basis for which is one of pure calculation from the statement required to be furnished. Discretion and judgment must be exercised by the board of review in fixing the value of the stock, but the direction for the deduction arises, not from any discretion in that board, but from the positive and mandatory statute, binding on all alike, and the deduction should be made by the bank, as a necessary part of its statement for the information and guidance of the board of review, whose duties with respect to the deduction are purely administrative. *Board, etc.,* v. *Spangler* (1902), 159 Ind. 575; *Board, etc.,* v. *Conner* (1900), 155 Ind. 484; *Board, etc.,* v. *Heaston* (1896), 144 Ind. 583, 55 Am. St. 192; *Board, etc.,* v. *Davis* (1894), 136 Ind. 503, 22 L. R. A. 515.

The subjects and methods of taxation are legislative matters, and cannot be disturbed so long as the method prescribed is applicable alike to all within the prescribed class. Corporations, individuals, wholesale and retail dealers, domestic and foreign corporations, may be separately classified, and taxed differently, so long as the constituent classes are treated alike. *Board, etc.,* v. *Johnson, supra,* and cases cited; *Pomeroy* v. *Beach* (1898), 149 Ind. 511; *Duckwall* v. *Jones* (1901), 146 Ind. 682; *Chicago, etc., R. Co.* v. *Oshkosh* (1900), 107 Wis. 192, 83 N. W. 294; *State, ex rel.,* v. *McFetridge* (1885), 64 Wis. 130, 24 N. W. 140; *Pingree* v. *Mich. Cent. R. Co.* (1898), 118 Mich. 314, 76 N. W. 635, 53 L. R. A. 274; *Commonwealth* v. *Interstate, etc.,*

*St. R. Co.* (1905), 187 Mass. 436, 73 N. E. 530, 11 L. R. A. (N. S.) 973; *Buffalo, etc., R. Co.* v. *Buffalo St. R. Co.* (1888), 111 N. Y. 132, 19 N. E. 63, 2 L. R. A. 384; *Minneapolis, etc., R. Co.* v. *Minnesota* (1902), 186 U. S. 257, 22 Sup. Ct. 900, 46 L. Ed. 1151; *Louisville, etc., R. Co.* v. *Kentucky* (1902), 183 U. S. 503, 22 Sup. Ct. 95, 46 L. Ed. 298; *Tullis* v. *Lake Erie, etc., R. Co.* (1899), 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192; *Dow* v. *Biedelman* (1888), 125 U. S. 680, 8 Sup. Ct. 1028, 31 L. Ed. 841; *Missouri* v. *Lewis* (1879), 101 U. S. 22, 25 L. Ed. 989; *Chicago, etc., R. Co.* v. *Iowa* (1876), 94 U. S. 155, 24 L. Ed. 94; *Hayes* v. *Missouri* (1887), 120 U. S. 68, 7 Sup. Ct. 350, 30 L. Ed. 578; *Barbier* v. *Connolly* (1885), 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923.

We see no ground of constitutional objection to the statute, but its construction is so involved with the constitutional questions urged, that we are constrained to depart

11. from the ordinary rule of declining to pass upon constitutional questions where the case may be disposed of on other grounds, for the judgment must be reversed on other grounds.

In making the assessment the taxing officers added to the nominal surplus of the bank $14,800 invested in real estate, which was clearly erroneous under any theory of the

12. law.   In such a case, where the sum invested in real estate is deducted from the capital stock or surplus, before or in making the return, the assessed value of the real estate should not be deducted in fixing the value of the stock, because if it is eliminated from one side of the account it should not be included in the other.

The language, "deducted from the valuation of the capital or capital stock," in the statute, means deducted for the purposes of taxation in fixing the valuation of the stock for taxation.   Upon the basis adopted by the board in making the assessment, there should have been taken 80 per cent, leaving for taxation $58,240, instead of $63,010, and for this error the

judgment must be reversed, with instructions to the court below to overrule the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.